# E. B. COULSON, Appellant, v. ABERDEEN-SPRING-FIELD CANAL COMPANY, a Corporation, Respondent.

## [227 Pac. 29.]

DISMISSAL AND NONSUIT—MOTION FOR NONSUIT—WATERS AND WATER-COURSES—IRRIGATION—WATER USERS—AMOUNT OF WATER—BENEFICIAL USE—DIVERSION OF WATER—APPEAL AND ERROR—REVIEW—. QUESTIONS CONSIDERED—PLEADINGS—CAREY ACT CORPORATIONS—JUDICIAL NOTICE.

1. By making a motion for nonsuit at the close of the plaintiff's case, the defendant admits, for the purpose of the motion, all the facts which the evidence tends to prove.

2. It is against the public policy of the state, as well as against express enactments, for a water user to take from an irrigation canal more water, of that to which he is entitled, than he can apply to a beneficial use.

3. The waters of this state belong to the state, and the right to the beneficial use thereof is all that can be acquired.

4. No duty devolves upon any water user to divert any water that he cannot put to a beneficial use.

5. An appellate court will not consider a question not put in issue by the pleadings.

6. A court will not take judicial notice of the existence of a Carey Act corporation.

APPEAL from the District Court of the Sixth Judicial District, for Bingham County. Hon. Robert M. Terrell, Judge.

Action for damages. Judgment of nonsuit. *Reversed.*

G. F. Hansbrough, for Appellant.

The insufficiency of the complaint is not a ground upon which a motion for a nonsuit may be based. (C. S., sec. 6830; *Ludwig v. Ellis,* 22 Ida. 475, 126 Pac. 769; *Strong v. Western Union Tel. Co.,* 18 Ida. 389, Ann. Cas. 1912A, 55, 109 Pac. 910, 30 L. R. A., N. S., 409.)

On motion for nonsuit after the plaintiff has rested the defendant must be deemed to have admitted all the facts of which there is any evidence, and all the facts which the evidence tends to prove. (*Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497.)

Whitcomb, Cowen & Clark, for Respondent, cite no authorities on points decided.

WM. E. LEE, J.—This is an action for damages for the death of a bull. Appellant is a land owner on what is known as the Aberdeen-Springfield irrigation project, and respondent operates the canal which furnishes appellant and other farmers with water for the irrigation of their lands. Among its other canals and laterals, respondent operates what is known as the low line canal, which extends to and terminates upon the lands of appellant. From the point where the canal terminates, respondent uses what is known as a waste ditch for the purpose of conducting unused or waste water into Carter Creek, through which said water is discharged into the Snake River. Appellant alleges that the discharge of water from the terminus of the canal has resulted in the washing out, upon his lands, of a gulch about 1,000 feet long, 25 or 30 feet deep, and from 20 to 80 feet wide. Respondent admits the existence of the gulch and its cause, but alleges that the gulch, except a small part nearest the terminus of the canal, was caused by its predecessor. The banks of the gulch are very percipitous, overhanging in places, and the evidence shows that the bull fell into that part of the gulch which was washed out after respondent began the operation of the canal system. Appellant alleges that the gulch, at the point where the bull received the injury that resulted in his death, was caused by the failure of respondent to build and maintain proper drops or flumes to prevent the washing out of the land. Respondent denies any negligence on its part, and specifically denies that it has failed to control properly the water of the waste ditch in its flow from the terminus of the canal, or that it has failed to maintain proper drops or flumes to pre-

39 Idaho.—21

vent the washing. As a separate defense, respondent alleges that appellant has also used the waste ditch for the purpose of disposing of unused water intended for the irrigation of his lands; that, during all the time that appellant has been in possession of his premises, because of an understanding with respondent and at appellant's request, "a larger quantity of water has been run through the said low line lateral for the benefit of the plaintiff [appellant] than plaintiff was entitled to have and use from the said canal system, under the promise and agreement of the plaintiff that he, the plaintiff, would take care of the water and be responsible for it after the same entered his premises; [and] that the plaintiff, when such water has been furnished to him as aforesaid has allowed the same to waste through said waste-way, instead of using the same for irrigation purposes, and has thus contributed to the dangerous character of the said waste-way, if such was dangerous; . . . . "

The testimony showed that appellant was the lowest user on the low line canal, and that, between his place and the nearest waste ditch above, about twelve farmers received water. It appeared that the water users between appellant and the nearest waste ditch above shut off their water when they desired, and that the water placed in the canal by the respondent and not used by any of the water users came down through the lateral, and, except that used by appellant, was let out into the said waste ditch. It further appeared that some years ago, a box flume was constructed from the terminus of the low line canal extending about 60 feet to the upper end of the gulch as it then existed, but that it went to pieces, and that, during the months of August and September, 1920, the waste water from the terminus of the canal washed away the ground and the gulch was thereby extended up to the terminus of the canal; and it is appellant's contention that it was the negligence of the company, in not constructing some sort of flume, or other suitable instrumentality, to carry the waste water from the terminus of the canal, that caused the land to wash out and create the gulch where the

bull was injured. At the close of appellant's case the court upon respondent's motion, granted a nonsuit, and judgment of dismissal was thereupon made and entered. This appeal is from the judgment.

By making the motion for nonsuit at the close of appellant's case, respondent, for the purpose of the motion, admitted all the facts which the evidence tended to prove. (*Schleiff v. McDonald*, 37 Ida. 423, 216 Pac. 1044; *Bank of Commerce v. Baldwin*, 12 Ida. 202, 85 Pac. 497; *Later v. Haywood*, 12 Ida. 78, 85 Pac. 494; *York v. Pacific & Northern Ry. Co.*, 8 Ida. 574, 69 Pac. 1042; *Simpson v. Remington*, 6 Ida. 681, 59 Pac. 360; *Kansteiner v. Clyne*, 5 Ida. 59, 46 Pac. 1019; *Lewis v. Lewis*, 3 Ida. 645, 33 Pac. 38.)

The first contention of respondent upon which he claims a nonsuit was properly granted is that the greater portion of the water causing the washout where the bull was injured belonged to appellant, in that the evidence discloses, says respondent, that the water to which appellant was entitled which was conducted to and upon his land for his use in irrigation, together with other water, furnished appellant for such use, in addition to his quota, which he had agreed with respondent so to use, was not taken from the canal and used for irrigation, but that a large quantity of such water was permitted by appellant to pass out through the terminus of the canal, thus causing, or largely causing, the washout where the injury occurred. Under these circumstances respondent claims that, even though it was guilty of negligence in the creation of the gulch, and that it was its duty to take steps to prevent injury therefrom, appellant contributed to the injury and cannot recover.

Respondent's position, in its final analysis, is that a legal duty devolved upon appellant to divert *all the water* to the use of which he was entitled, irrespective of whether he could put it to a beneficial use. It is somewhat doubtful if this question is raised by the answer. However this may be, it is against the public policy of the state, as well as against express enactments, for a water user to take from an irrigation canal more water, of that to which he is entitled,

than is necessary for the irrigation of his land and for domestic purposes. The waters of this state belong to the state, and the right to the beneficial use thereof is all that can be acquired. (C. S., sec. 8529; *Stickney v. Hanrahan,* 7 Ida. 424, 63 Pac. 189.) It follows, therefore, that no legal duty devolves upon any water user to divert any more of the water to which he is entitled than he can put to a beneficial use. To hold that a water user may be required to divert all his water, irrespective of any necessity therefor, would necessitate requiring the canal company to make available to all water users at all times all the water they are entitled to receive, irrespective of their desires or necessities. In permitting the water not needed by him to remain in the canal and pass into the waste ditch appellant cannot be held to have contributed to the injury. The consideration of this question can be narrowed down to the effect of the failure on the part of appellant to use any excess water furnished him at his request and which he agreed to use. This may be disposed of by saying that there is evidence tending to show that such excess water was not permitted to go to waste, appellant having testified that he doubted that he ever received any excess water, or that he ever told the water-master that he would take care of any such water that was furnished him. We are of the opinion that appellant submitted sufficient evidence to put respondent to its proof.

The second ground upon which respondent contends that the judgment of nonsuit should be sustained is that, since respondent is a Carey Act construction company, and was granted, by statute, a right of way for its canals and ditches while it maintains its system, it has all the "incidents" of ownership of such right of way; that the statute does not require it to fence its right of way, and that in failing to fence the right of way (the gulch) it violated no duty to appellant; and that it is not a case where it maintains a dangerous agency upon the land of another, but is one that it maintains upon its own lands. We find that it is not necessary to pass upon this contention. It is not in issue.

There is no allegation that respondent is a Carey Act company. It is fundamental that an appellate court will not consider any question not put in issue by the pleadings. This court will not take judicial notice of the existence of any Carey Act company or corporation. (C. S., sec. 7933.) And while we will take judicial notice of a statute giving a Carey Act construction company a right of way over Carey Act lands, there is no evidence that the land upon which this gulch is situate was such land when the system was constructed. The complaint alleges and the answer admits that the lands belong to appellant. In fact, respondent alleged that " . . . . The plaintiff has been guilty of neglect in permitting the said waste-way to continue *upon* his premises. . . . . " (Italics ours.)

Judgment reversed. Costs to appellant.

McCarthy, C. J., concurs.

BUDGE, J., Concurring Specially.—At the close of appellant's testimony respondent made the following motion for nonsuit:

"We move for a nonsuit of this case for the reason that the complaint herein fails to state a cause of action; for the further reason that the proof fails to establish any negligence on the part of the defendant, and there is an entire absence of sufficient or any proof to establish any liability on the part of the defendant; for the further reason that the evidence shows conclusively that the plaintiff herein is guilty of such negligence, if there is any negligence in the case whatever, he is guilty of such negligence—of contributory negligence as will preclude his recovery."

C. S., sec. 6830, specifies the grounds upon which an action may be dismissed or a judgment of nonsuit entered, and the insufficiency of the complaint to state a cause of action is not one of the grounds specified in such statute. (*Ludwig v. Ellis*, 22 Ida. 475, 126 Pac. 769; *Strong v. Western Union Tel. Co.*, 18 Ida. 389, 407, Ann. Cas. 1912A, 55, 109 Pac. 910, 30 L. R. A., N. S., 409.)

The rule is well established that a motion for a nonsuit upon the ground that the proof fails to establish any negligence on the part of the defendant, that there is an entire absence of sufficient proof to establish liability on the part of the defendant, or that the evidence shows conclusively that the plaintiff is guilty of contributory negligence, without specifying wherein the evidence fails to establish any negligence or wherein and in what particular there is an entire absence of sufficient proof to establish liability or in failing to point out in what particulars the plaintiff was guilty of contributory negligence, is too general to be considered and should be overruled. (38 Cyc. 1552, and cases therein cited.)  The rule announced by this court in the case of *Idaho Mercantile Co. v. Kalanquin,* 7 Ida. 295, 62 Pac. 925, is in harmony with the rule above stated, wherein this court held: "A motion for a nonsuit must specify particularly the point relied upon for such nonsuit, and thus call the attention of the court and opposing party to the grounds of the motion," the court observing: "The reason of the rule is obvious.  If the attention of the court and opposing party is called to the specific point relied upon, opportunity might be then and there given for the removal of the objection relied upon for the nonsuit and the objection removed."

In the case of *Barlow v. Salt Lake & U. R. Co.,* 57 Utah, 312, 194 Pac. 665, it is held that:

"A motion for nonsuit should be specific, and a motion stating that the evidence fails to show negligence or carelessness is too general to be considered."

In *In re Soale,* 31 Cal. App. 144, 159 Pac. 1065, we find the rule stated as follows:

"Motion for nonsuit, if in general terms, failing to specify any particular defect in the evidence, should be disregarded."

Also, in *Security Inv. Co. of San Bernardino v. Bartram,* 54 Cal. App. 540, 202 Pac. 337, it is held:

"A motion for a nonsuit on the ground 'that plaintiff has wholly failed to prove his case' is insufficient, as it does not call attention to the particular matters relied on."

It will be observed from a reading of the motion that the statements made therein are mere conclusions and in order for this court to determine the correctness of the conclusions so stated it would be necessary to examine the entire record to ascertain whether the same are correct, and this we are not called upon to do.

The motion for nonsuit should have been overruled for the reasons herein given.