(April 14, 1925.)

# FIRST NATIONAL BANK OF HAGERMAN, IDAHO, a Corporation, Appellant, v. C. W. STRINGFIELD and C. L. NELSON, Respondents.

[235 Pac. 897.]

APPEAL—MOTION TO DISMISS—NATIONAL BANK—EXCESS LOAN—LIABILITY OF OFFICERS—PARTICIPATION BY DEPOSITOR—EFFECT OF—COSTS—EXPENSES OF TAKING DEPOSITION.

1. A motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove, and appellant is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the evidence.

2. The cashier of a national bank is liable for any loss that results to the bank from the making by him of a loan to any person from the funds of the bank of a sum in excess of ten per cent of the bank's capital and unimpaired surplus.

3. Where a promissory note is taken by a bank and is indorsed "without recourse" and held by the bank for months and is then delivered to one for the purpose of collection, the indorsement is not binding on the collector and he may show the purpose for which the note was delivered to him.

4. An indorsement "without recourse" constitutes the entire contract between an indorser and indorsee when the note is delivered in pursuance of the indorsement.

5. Money deposited in a bank on general deposit belongs to the bank and not to the depositor.

6. The lending of money withdrawn from the account of a depositor, with the authority of the depositor, does not constitute the making of an excess loan under U. S. Rev. Stats., sec. 5200, and the bank is not liable to the depositor in an action to recover the deposit.

7. A national bank cannot be held for the act of its cashier in lending money for a depositor, nor is the bank liable on a guarantee of the payment of such a loan.

8. Expenses of an attorney incurred in taking a deposition are not taxable as costs.

APPEAL from the District Court of the Fourth Judicial District, for Gooding County. Hon. H. F. Ensign, Judge.

Action for damages. Judgment of nonsuit. *Reversed.*

Bissell & Bird, for Appellant.

The rule excluding parol evidence which tends to vary written instruments does not apply where the action is between one party to the writing and a third party, a stranger thereto. (22 C. J., p. 1292, and cases cited; 10 R. C. L., p. 1020, and cases cited.)

If the indorsement contract on a promissory note is not completed by a delivery to and acceptance by an indorsee, there is no present contract in writing which can prevent parol evidence to explain a blank indorsement on the notes. (*Spencer v. Carstarphen,* 15 Colo. 445, 24 Pac. 882; *Burke v. Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816, 38 L. ed. 698.)

A cashier is bound to exercise reasonable skill, care and diligence in the exercise of his duties, and a loan made in excess of the amount prescribed by sec. 5200, U. S. Rev. Stats., is unlawful and *ipso facto* negligent, and the officer making the same is liable to his bank for consequent damages. (*City National Bank v. Crow,* 27 Okl. 107, Ann. Cas. 1912B, 647, 111 Pac. 210; *Corsicana Nat. Bank v. Johnson,* 251 U. S. 68, 40 Sup. Ct. 82, 64 L. ed. 141; *Solomon v. Bates,* 118 N. C. 311, 54 Am. St. 725, 24 S. E. 478; *Bowerman v. Hamner,* 250 U. S. 504, 39 Sup. Ct. 549, 63 L. ed. 1113; 3 R. C. L. 465; 7 C. J., pp. 172, 562; *Seventeenth Ward Bank v. Smith,* 51 App. Div. 259, 64 N. Y. Supp. 888; *Boyd v. Applewhite,* 121 Miss. 879, 84 So. 16; *San Joaquin Bank v. Bours,* 65 Cal. 247, 3 Pac. 864; *Magale v. Fomby,* 132 Ark. 289, 201 S. W. 278; *Vance v. Motley,* 92 Tenn. 310, 21 S. W. 593; *Fergus etc. Falls Woolen Mills Co. v. Boyum,* 136 Minn. 411, 162 N. W. 516, L. R. A. 1918A, 919.)

An action against a bank cashier for damages sustained by the bank on account of a loan made by said cashier in contravention to sec. 5200, U. S. Rev. Stats., is an action in tort, and the bank need not prove actual payment of the damage so suffered as a condition precedent to recovery from the cashier. (*Corsicana Nat. Bank v. Johnson, supra; Denning v. State,* 123 Cal. 316, 55 Pac. 1000; *Hallidie v. Enginger,* 175 Cal. 505, 166 Pac. 1; *Nelson v. Great Northern*

*Ry. Co.,* 28 Mont. 297, 72 Pac. 642; 9 R. C. L., p. 966; 26 R. C. L., p. 758, sec. 4; 1 C. J., p. 1013, note 91; *Solomon v. Bates, supra;* 26 R. C. L., p. 494, note 9.)

Where it is not shown that a note is delivered to or accepted by an indorsee there is no contract by virtue of an indorsement in blank that appears on the notes; and if a third person later receives the note for the purpose of collection only, such suit does not constitute a ratification of the indorsement thereon. (*Lewis County v. State Bank of Peck,* 31 Ida. 244, 170 Pac. 98; *Burke* v. *Dulaney, supra; Craig v. Palo Alto Stock Farm,* 16 Ida. 701, 102 Pac. 393.)

A national bank possesses the inherent power to guarantee payment of its commercial paper, either orally or by writing, when such paper is disposed of to a third party. (*Commercial Nat. Bank v. Pirie,* 82 Fed. 799, 27 C. C. A. 171; 7 C. J., p. 815, sec. 746; *People's Bank v. National Bank of Chicago,* 101 U. S. 181, 25 L. ed. 907; *Hanover Nat. Bank v. First Nat. Bank,* 109 Fed. 421, 48 C. C. A. 482.)

No costs are recoverable except those provided for by statute or rule of court, and the fact that costs may have been necessarily incurred in connection with the trial of a cause is not alone sufficient to render such items proper. (C. S., secs. 7209, 7218; *Cronan v. District Court,* 15 Ida. 462, 98 Pac. 614; *Sime v. Hunter,* 55 Cal. App. 157, 202 Pac. 967; *McDonald v. Burke,* 3 Ida. 266, 35 Am. St. 276, 28 Pac. 440; 15 C. J., pp. 137 and 144; *Aldrich v. Maher,* 153 Ill. App. 413.)

James & Ryan, for Respondent Stringfield.

Any loan to be excess and prohibited by sec. 5200, U. S. Rev. Stats., must be a loan of the funds of the bank and the indebtedness must extend to the bank. (*Albitztigui v. Guadalupe Y. Caloo Min. Co.,* 92 Tenn. 598, 22 S. W. 739.)

If a statute limits the amount of indebtedness which a corporation may lawfully incur but does not impose personal liability for violation thereof upon directors or other officers, there is no personal liability, since it did not exist at com-

mon law. (4 Fletcher, Ency. Corp., pp. 3871, 3872, sec. 2630; *Frost Mfg. Co. v. Foster,* 76 Iowa, 535, 41 N. W. 212; *Randolph v. Ballard County Bank,* 142 Ky. 145, 134 S. W. 165; *Fusz v. Spaunhorst,* 67 Mo. 256; *Zinn v. Mendel,* 9 W. Va. 580.)

The president and cashier of a national bank have no power to bind the bank except in the discharge of their ordinary duties. (*Bank of United States v. Dunn,* 31 U. S. 51, 8 L. ed. 20; Boone on Banking, secs. 101, 119, 353 and 688; *Western Nat. Bank v. Armstrong,* 152 U. S. 346, 14 Sup. Ct. 572, 38 L. ed. 470.)

A national bank has no power to engage to make loans for others or to act as brokers. (*Grow v. Cockrill,* 63 Ark. 418, 39 S. W. 60, 36 L. R. A. 89; *Weckler v. First Nat. Bank,* 42 Md. 581, 20 Am. Rep. 95; *First Nat. Bank v. Hoch,* 89 Pa. 324, 33 Am. Rep. 767; *First Nat. Bank v. National Exchange Bank,* 92 U. S. 122, 23 L. ed. 679; *Dresser v. Traders Nat. Bank,* 165 Mass. 120, 42 N. E. 567; *Ruohs v. Third Nat. Bank,* 44 Tenn. 57; *Farmers & Merchants' Nat. Bank v. Smith,* 77 Fed. 129, 23 C. C. A. 80.)

The loaning of money for depositors or other persons is not within the authority of a national bank and such bank cannot be held liable for the acts of its president and cashier in making such a loan. (7 C. J., p. 560 (96), 788 (61); *Pollock v. Lumbermen's Nat. Bank,* 86 Or. 324, 168 Pac. 616, L. R. A. 1918B, 402; *American Nat. Bank v. E. W. Adams & Co.,* 44 Okl. 129, 143 Pac. 508, L. R. A. 1915B, 542; 3 R. C. L., p. 423, sec. 51.)

A national bank has no power to guarantee the debt of another and its act in so doing is *ultra vires,* when such loan is for the benefit of a third person, and the bank is not estopped from setting up the *ultra vires* character of the act even though the contract is fully executed. (*Bowen v. Needles Nat. Bank,* 94 Fed. 925, 36 C. C. A. 553; *Commercial Nat. Bank v. Pirie,* 82 Fed. 799, 27 C. C. A. 171; *First Nat. Bank v. American Nat. Bank,* 173 Mo. 153, 72 S. W. 1059; *California Nat. Bank v. Kennedy,* 167 U. S. 362, 17 Sup. Ct. 831, 42 L. ed. 198; *Merchants' Bank of Valdosta v. Baird,*

160 Fed. 642, 90 C. C. A. 338, 17 L. R. A., N. S., 526; *Fidelity & D. Co. v. National Bank,* 48 Tex. Civ. 301, 106 S. W. 782; *Norton v. Derry Nat. Bank,* 61 N. H. 589, 60 Am. Rep. 334; *Citizens' Cent. Bank of Appleton,* 216 U. S. 196, 30 Sup. Ct. 364, 54 L. ed. 443; *Rankin v. Emigh,* 218 U. S. 27, 30 Sup. Ct. 672, 54 L. ed. 915.)

A cashier of a bank cannot render such bank liable on a guaranty given in connection with a transaction not within the scope of the bank's powers. (7 C. J. 787; *Farmers & Merchants' Nat. Bank v. Smith, supra.*)

A person seeking indemnity from a person alleged to have caused the injury must have been legally liable to the injured party, that is, the injured party's claim must be a valid one. (22 Cyc. 98, and notes; 31 C. J., p. 453, sec. 52 and notes; *Mann's Merc. Co. v. Smith,* 107 Miss. 16, 64 So. 929.)

The statutory liability of an officer of a corporation extends only to corporate debts which are enforceable against the corporation. (7 R. C. L., p. 516, sec. 502.)

A judgment recovered against a corporation is not itself proof of an indebtedness on the part of the corporation to the judgment creditor in so far as the liability of its officers is concerned. It is not even *prima facie* evidence of the existence of a debt due from the corporation. (7 R. C. L., p. 516; *Chase v. Curtis,* 113 U. S. 452, 5 Sup. Ct. 554, 28 L. ed. 1038; Thompson on Corporations, pp. 413, 414, sec. 1378; *Dabney v. Stevens,* 40 How. Pr. (N. Y.) 341; *Miller v. White,* 50 N. Y. 137; *Whitney Arms Co. v. Barlow,* 63 N. Y. 62, 20 Am. Rep. 504.)

When a promissory note is indorsed without recourse, evidence of an oral guaranty is inadmissible. (*Payette Nat. Bank v. Ingard,* 34 Ida. 295, 200 Pac. 344.)

If parties are *in pari delicto* as to an illegal contract, neither can maintain an action against the other to enforce such contract, nor to recover money paid pursuant thereto, but on the contrary the law leaves such parties where it finds them. (*McFall v. Arkoosh,* 37 Ida. 243, 215 Pac. 978.)

WM. E. LEE, J.—Respondent Stringfield moves to dismiss the appeal because the transcript was not filed within ninety days after the appeal was perfected, as provided by Rule 26, no extensions of time having been obtained under Rule 28. For the reasons stated in *Nielson v. Board of County Commissioners of Bonneville County,* ante, p. 481, 234 Pac. 686, and on the authority of that decision the motion is denied.

This is an action by a national bank to recover from its former cashier the amount of certain excess loans made in violation of sec. 5200, U. S. Rev. Stats. It is the theory of appellant that the making of such excess loans constituted a tort on account of which the person making the loan is liable to the bank for the resulting loss.

Appellant alleges that respondent Stringfield was its cashier and a member of its discount and loan committee; that while acting as cashier, Stringfield loaned $2,596 of the bank's funds to one Harry Hosac, the said Hosac having already borrowed from the bank an amount equal to ten per cent of its capital and unimpaired surplus; that the loan of $2,596 to said Hosac was a violation of the law; that the said Hosac became insolvent and unable to pay the loan. At the close of appellant's case, on motion of respondents, the court struck certain of the evidence, granted a motion for nonsuit, and entered a judgment of nonsuit and dismissed the action. From the judgment this appeal is taken.

It is a well-settled rule in this state that a motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove, and appellant is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the evidence. (*Young v. Washington Water Power Co.,* 39 Ida. 539, 228 Pac. 323; *Coulson v. Aberdeen-Springfield Canal Co.,* 39 Ida. 320, 227 Pac. 29, and cases there cited. See, also, *Corsicana Nat. Bank v. Johnson,* 251 U. S. 68, 40 Sup. Ct. 82, 64 L. ed. 141.)

The paid-in capital stock of appellant was $25,000; the unimpaired surplus was $5,000. On October 4, 1919, Hosac was

already indebted to appellant in the sum of $3,000 and under U. S. Rev. Stats., sec. 5200, it was unlawful for the bank to lend him any further sum. However, Stringfield, as cashier, on October 24, 1919, loaned Hosac $1,596; and, under identical conditions, he loaned Hosac the following additional sums; $300 on November 28, 1919; $150 on December 1, 1919; $150 on December 4, 1919; $400 on December 8, 1919, making a total excess loan of $2,596. In addition to Stringfield, respondent Nelson, who was the president, and one Bell, who was a director, constituted the loan and discount committee. Neither the propriety of making the excess loans nor the fact that they had been made was ever brought to the attention of this committee. A short time after the making of the $1,596 loan the note evidencing the same was sent to a bank in Bliss indorsed "without recourse, First National Bank of Hagerman, Idaho, by C. S. Stringfield, Cashier." Some time in March or April, 1920, the appellant bank underwent a reorganization and Stringfield was succeeded, as cashier, by one Frazier. Frazier found the notes in the vault of the bank in an envelope and not in the lock-box of Bell and Jones. On the back of each of the notes was an indorsement similar to the one above quoted. Some investigation was at that time made, and it was learned that these notes had been charged to the account of Bell and Jones, who were depositors. Bell and Jones insisted that they had never authorized anyone to charge the notes to their account, and demanded that the money be replaced to their credit. The bank and Bell and Jones came to no complete understanding with regard to the matter. The bank, however, delivered the notes to Bell and Jones for the purpose of collection. Bell and Jones made an unsuccessful attempt to collect from Hosac, and returned the notes to the bank. Hosac is insolvent. Thereafter Bell and Jones commenced an action against the bank to recover the money they had deposited in the bank, which had been depleted by the excess loans with which their account had been credited; and they obtained a judgment therefor against appellant. The deposition of respondent Nelson was taken on behalf of appellant;

40 Idaho—38

and with respect to certain of the facts hereinbefore narrated there is considerable conflict in the evidence. We do not hold that the jury would have found the facts, as we have stated them, to have been sustained by a preponderance of the evidence. We are of the opinion, however, that, when considered from the standpoint of a motion for a nonsuit, the jury would have been justified in finding that such facts had been established.

Under these facts, the principal question of law involved is whether the cashier of a national bank is liable for a loss sustained through the making by him of an excess loan of the bank's funds. The cashier of a bank is required to exercise reasonable care and diligence in performing the duties of his office. If the bank suffers a loss because of a failure of the cashier to exercise reasonable skill, care or diligence in performing his duties he is liable to the bank. "The cashier is liable for losses resulting from his illegal, fraudulent or tortious act, or from his negligence." (7 C. J. 567.) The making of a loan in excess of ten per cent of the capital and unimpaired surplus is prohibited by law. A cashier, who makes such a loan commits an unlawful and wrongful act and is liable for any loss that results therefrom. (*Boyd v. Applewhite,* 121 Miss. 879, 84 So. 16; *Wynn v. Tallapoosa Bank,* 168 Ala. 469, 53 So. 228; Michie on Banks and Banking, p. 275; 3 R. C. L. 465; *Vance v. Mottley,* 92 Tenn. 310, 21 S. W. 593; *Commercial Bank etc. v. Ten Eyck,* 48 N. Y. 305; *Austin v. Daniels,* 4 Denio (N. Y.), 299; *Wallace v. Lincoln Sav. Bank,* 89 Tenn. 630, 15 S. W. 448; *San Joaquin Valley Bank v. Bours,* 65 Cal. 247, 3 Pac. 864; *Seventeenth Ward Bank v. Smith,* 51 App. Div. 259, 64 N. Y. Supp. 888. See, also, *Corsicana Nat. Bank v. Johnson,* 251 U. S. 68, 40 Sup. Ct. 82, 64 L. ed. 141; *Bowerman v. Hamner,* 250 U. S. 504, 39 Sup. Ct. 549, 63 L. ed. 1119.)

Respondent Stringfield contends, however, that under U. S. Rev. Stats., sec. 5200, since he was not a director of the bank, he is not liable, and that only directors who participated in or assented to the excess loan are liable. We cannot give our assent to such a construction of the statute. The cashier is

the executive officer through whom the financial operations of the bank are conducted. It surely could not have been the intention of Congress to prohibit the making of an excess loan and then exempt from liability for the loss occasioned thereby the very officer charged with the duty of making loans for the bank. The statute does not change the common-law liability of officers of a national bank. Sec. 5200, U. S. Rev. Stats., merely fixes a standard by which it can be readily determined whether any loan is excessive. As to directors, the law ". . . . describes a standard of duty . . . . without creating a new cause of action, or altering the foundation upon which the personal liability of directors for wrongful or negligent acts ultimately rests or depends." (*Cockrill v. Cooper*, 86 Fed. 7, 29 C. C. A. 529.) "While the statute furnishes the exclusive rule for determining whether its provisions have been violated or not, this does not prevent the application of the common-law rule for measuring violations of common-law duties." (*Bowerman v. Hamner*, 250 U. S. 504, 39 Sup. Ct. 549, 63 L. ed. 1113.) It would be most unreasonable to conceive that the law imposes a liability on a director, for an excess loan to which he assents, and at the same time relieves the cashier, an active officer of the bank, from any liability for such an unlawful act which he himself commits. To say that a cashier, entrusted with the funds of a bank, may make excess loans of the bank's funds in violation of a positive provision of the law, without incurring liability therefor, would do violence to the plainest principles of law and justice, and it is our conclusion that there is nothing in the National Banking Law that relieves the cashier of a bank from the liability imposed on him by the common law for losses resulting from making an excess loan of the funds of a national bank. Proof that the cashier made a loan to any person of the funds of the bank in excess of ten per cent of its capital and unimpaired surplus and the loss that resulted to the bank therefrom makes a *prima facie* case for the jury.

Since this cause must be remanded, there are other questions necessary to be noticed. Respondents contend that

there was available to them in this action, each and every defense available to appellant in the action in which Bell and Jones recovered the judgment against appellant. The action of Bell and Jones against appellant was to recover the sum deposited by them and withheld by the bank. It is contended that in that action the bank could have defended on the ground that the Hosac notes had been delivered to Bell and Jones "without recourse." Whether these notes were delivered to Bell and Jones was a question of fact. The notes were indorsed by respondents "without recourse," one of them was delivered to the Bliss Bank, and the others lay in the appellant bank for several months until discovered by the present cashier, and there is substantial evidence that they were never delivered to Bell and Jones under the "without recourse" indorsement; but that they were taken by Bell and Jones months after the indorsement was made and for the purpose of collection only, with the understanding with appellants that their rights would be in no manner impaired on that account. If no delivery was made to Bell and Jones in consequence of the indorsement and the notes were merely indorsed and held in the bank, Bell and Jones were not bound by the indorsement. It would, therefore, appear that under the circumstances the rule of *Payette Nat. Bank v. Ingard,* 34 Ida. 295, 200 Pac. 344, does not apply; and that appellant should have been permitted to show the conditions under which the notes came into the possession of Bell and Jones and were returned to appellant. It may also be said that, if the acts of appellant and Bell and Jones, in the delivery of the notes to Bell and Jones and their redelivery to the bank were in good faith, appellant, in the trial of the cause in which Bell and Jones recovered their judgment against it, could not have defended because of the "without recourse" indorsement, because appellant, and not Bell and Jones, was then the holder of the notes. However, should the evidence disclose that, with full knowledge of the facts and circumstances, Bell and Jones accepted the Hosac notes from the bank as their property and thereafter looked to Hosac for payment of the notes, they should not

be permitted to hold the bank for any loss sustained by them. If the evidence should show that the money of the bank was actually loaned to Hosac and that the notes representing the loans were sold and delivered under the indorsement ''without recourse'' to Bell and Jones, the indorsement would constitute the entire contract between the bank and Bell and Jones. (*Payette Nat. Bank v. Ingard, supra.*) Such facts would have constituted a defense for the bank in the action against it by Bell and Jones, and the same defense was available to respondents in this action.

With respect to the transfer to the Bliss Bank of one of the notes and its subsequent transfer by the Bliss Bank to appellant; Bell and Jones, according to evidence, did not come into possession of this note until after it had been returned by the Bliss Bank to appellant. Certainly the action of Bell and Jones against appellant could not have been defeated by the arrangement between the two banks and the subsequent transfers of the note, since Bell and Jones were not a party to the arrangement and transfers between the banks.

Respondents contend that Stringfield did not loan the money of the bank to Hosac, but that it was the money of Bell and Jones, and that sec. 5200, U. S. Rev. Stats., has no application. Bell and Jones made a general deposit in appellant's bank. The funds deposited thereupon became the funds of the bank and were no longer the funds of Bell and Jones. A banker cannot lend money in his bank, charge the amount thereof to the account of a depositor and be heard to say that the money loaned did not belong to the bank. There is evidence in the record, however, and on another trial respondents may be able to produce evidence, which will satisfy the jury, that Bell and Jones authorized respondents to loan for them such sums as they had on deposit with appellant; that in pursuance of such authorization respondents made the loans to Hosac, which we have referred to as ''excess loans,'' and that respondents, in making the loans, took the notes payable to appellant and indorsed and delivered them to Bell and Jones ''without recourse.'' Under such a situation Bell and Jones would have

no right of recovery against the bank; and in so far as Bell and Jones are concerned, the money loaned would not be deemed the funds of the bank, and would not constitute an excess loan by the bank as provided by sec. 5200 of the National Banking Law. Under such facts, the bank could have defended against the claim of Bell and Jones, and the same defense was available to respondents in this action. However, when a depositor tells the cashier that he is willing to lend any sums on deposit by him in the bank on good notes where the bank cannot handle such loans because in excess of the amount the bank is permitted by law to lend to any one person, but the depositor reserves the right to accept or reject any such proposed loan and does not give the cashier authority to withdraw funds from his account and make the loan for him, the cashier cannot lawfully make such a loan, and it will be deemed to have been made from funds belonging to the bank.

It may be laid down also as a sound rule of law that, if it should appear that respondents loaned money for Bell and Jones, with their authority, the bank would not be liable. It is not within the authority of a national bank to loan the money of a depositor, and the bank could not be held for the acts of its officers in making such loans. (*Grow v. Cockrill,* 63 Ark. 418, 39 S. W. 60, 36 L. R. A. 89; *Stockmen's Nat. Bank v. First Nat. Bank,* 38 Ida. 395, 221 Pac. 150; *Pollock v. Lumberman's Nat. Bank,* 86 Or. 324, 168 Pac. 616, L. R. A. 1918B, 402.) It would also be in excess of the power of a national bank to guarantee the payment of a loan made for another, and an officer of a national bank could not bind the bank in guaranteeing the payment of such a loan. (7 C. J. 787; *Farmers & Merchants' Bank v. Smith,* 77 Fed, 129, 23 C. C. A. 80; *Merchants' Bank of Valdosta v. Baird,* 160 Fed. 642, 90 C. C. A. 338, 17 L. R. A., N. S., 526; *Commercial Nat. Bank v. Pirie,* 82 Fed. 799, 27 C. C. A. 171.)

Respondent argues that the judgment recovered against appellant by Bell and Jones is not sufficient evidence of the loss sustained by the bank because of the excess loans to Hosac. This may be admitted. Respondents were not par-

ties to the action in which the judgment was obtained against the bank. However, there was other evidence of the loss sustained, and we are of the opinion that there was sufficient evidence of the loss sustained by the bank to justify submitting the question to the jury.

An appeal is also taken from an order denying a motion to tax costs. The one item involved is $86.75 allowed by the trial court on account of the expenses of respondent's attorney in attending the taking of the deposition of a witness in Portland. This was error and the motion to retax should have been granted.

"At common law costs were not recoverable *eo nomine*. Costs can therefore be recovered only in cases where there is statutory authority therefor. The power to impose costs must then be found in some statute or some rule of court in which the legislature had given the power in general terms to the court to make rules and orders in regard thereto. (11 Cyc. 24.) The cost items above disallowed are not provided for by statute or rule of court, hence cannot be recovered." (*Cronan v. District Court*, 15 Ida. 462, 98 Pac. 614; *Syme v. Hunter*, 55 Cal. App. 157, 202 Pac. 967.)

There is no provision of the statute and no rule which makes the expenses of an attorney incurred in taking a deposition taxable as costs any more than the expenses of an attorney incurred while attending a trial. Nor is it the theory of our law that such expenses should be allowed.

The motion to dismiss the appeal is denied; the judgment is reversed, and the order denying the motion to retax the costs is reversed.

Costs to appellant.

William A. Lee, C. J., Givens, J., and Babcock, Dist. J., concur.

Budge, J., concurs in the conclusion reached.